UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BION L. HENDERSON,

        Plaintiff

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

Civil Action No. 10-13452
HON. Marianne O. Battani
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Bion L. Henderson brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment be GRANTED and Plaintiff's motion DENIED.

## PROCEDURAL HISTORY

On March 11, 2002, Plaintiff filed an application for SSI (Tr. 38). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on August 31, 2004 (Tr. 38). On January 5, 2005, Administrative Law Judge ("ALJ") Regina Sobrino found that Plaintiff was not disabled, concluding that he was capable of a limited range of light work (Tr. 42). Plaintiff did not appeal the decision. However, on June 9, 2005, Plaintiff filed a second application for SSI, alleging disability as of November 19, 1989[1] (Tr. 62). After the denial of the claim, he filed a request for an administrative hearing, held February 6, 2008 in Flint, Michigan (Tr. 291). ALJ John L. Christensen

---

[1] Plaintiff later stipulated to an amended onset date of February 7, 2007 (Tr. 311).

presided. Plaintiff, represented by attorney Mikel Lupisella, testified, as did Vocational Expert ("VE") Timothy Lee Shaner (Tr. 298-307, 307-311). On February 13, 2008, ALJ Christensen found that Plaintiff was capable of a limited range of sedentary work (Tr. 20). On June 25, 2010, the Appeals Council denied review (Tr. 3-6). Plaintiff filed for judicial review of the final decision on August 30, 2010.

## BACKGROUND FACTS

Plaintiff, born August 12, 1971, was 36 when ALJ Christensen issued his decision (Tr. 23, 62). He completed a GED while incarcerated and worked briefly as a fast food worker (Tr. 123, 72). He alleges disability due to partial paralysis as a result of a 1989 gunshot wound (Tr. 112).

### A.     Plaintiff's February 6, 2008 Testimony

Plaintiff, a resident of Saginaw, Michigan, testified that he currently lived with his mother (Tr. 292). He indicated that he had six children under the age of 18 but did not see them on a regular basis because of physical problems (Tr. 298). He reported that since sustaining a gunshot wound in 1989 he was left-hand dominant (Tr. 298). Plaintiff stated that he had not held a driver's license since receiving a DUI conviction (Tr. 299). He denied current alcohol or drug use (Tr. 299). He reported receiving his GED while in prison (Tr. 301). He alleged disability as a result of partial right side paralysis, chronic headaches, and the inability to reach overhead or stand (Tr. 301-302). He noted that since being separated from his wife in the spring of 2007, he lived with his mother (Tr. 302).

Plaintiff denied grocery shopping or performing house or yard work (Tr. 303). He alleged that pain created sleep disturbances and that he took naps during the day (Tr. 303). He alleged daytime drowsiness as a result of prescription opiate use (Tr. 303). He estimated that he could stand for up to 10 minutes and walk one city block, adding that he required the use of a cane (Tr. 304).

He acknowledged that he could lift a gallon of milk, but denied that he could reach overhead (Tr. 305). He also reported difficulty opening jars, squatting and kneeling (Tr. 306). Plaintiff alleged concentrational problems as a result of depression (Tr. 306).

### B. Medical Records

#### 1. Treating Sources

April, 2005 imaging studies of the right knee were unremarkable (Tr. 208). July, 2005 treating notes indicate that Plaintiff experienced right knee swelling (Tr. 203). He tested positive for marijuana use (Tr. 214). In October, 2005, Plaintiff was directed to use a right knee brace (Tr. 66). Treating notes indicate that Plaintiff "left town on business" for two weeks in May, 2006 (Tr. 192). In October, 2006, Plaintiff complained of headaches and pain but did not appear for a followup visit (Tr. 184). November, 2006 records show that Plaintiff was receiving Prozac (Tr. 180).

March, 2007 treating notes show that Plaintiff continued to use Prozac (Tr. 173). The same month, Joel M. Beltran, D.O. found that Plaintiff's headaches resulted in part from "excessive analgesic usage" (Tr. 97). In May, 2007, Dr. Beltran opined that Plaintiff's seizure disorder was responding well to treatment (Tr. 216). June, 2007 treating notes show that Plaintiff was experiencing domestic problems (Tr. 247). He tested positive for marijuana use (Tr. 254). In August, 2007, a CT scan of the head showed that bullet fragments were stable (Tr. 258). A CT of the cervical spine showed a disc herniation at C6-C7 (Tr. 260).

On August 21, 2007, Plaintiff was admitted for several days of inpatient mental health treatment for suicidal ideation following a separation from his wife (Tr. 223, 230). Treating sources noted that his seizure disorder was well controlled (Tr. 232). Plaintiff was discharged on August 27 after exhibiting good insight and the ability to verbalize his feelings (Tr. 224). He was assigned

a GAF of 25 upon admission and 50 at the time of discharge[2] (Tr. 225). In September, 2007, Plaintiff complained of headaches and right knee pain (Tr. 171).

### 2. Consultive or Non-examining Sources

In August, 2005, Siva Sankaran, M.D. performed a consultive examination of Plaintiff on behalf of the SSA (Tr. 122-125). Noting that Plaintiff had sustained a gunshot wound to the head in 1989, he observed a right foot drop and right leg atrophy (Tr. 122, 125). Plaintiff reported that he had experienced a seizure one month before but did not recall other previous seizures (Tr. 122). He denied medication side effects (Tr. 122). Plaintiff reported depression but denied seeking treatment or taken medication for the condition (Tr. 123). He denied suicidal or homicidal ideation (Tr. 123).

Also in August, 2005, a non-examining Residual Functional Capacity Assessment (physical) was performed on behalf of the SSA (Tr. 139-146). Plaintiff was deemed capable of lifting 20 pounds occasionally and ten pounds frequently; standing and walking for two hours in an eight-hour workday and sitting for six; and limited pushing and pulling in all extremities (Tr. 140-141). Plaintiff was precluded from all kneeling, crouching, and crawling and the climbing of ladders, ropes, and scaffolds (Tr. 141). He was limited to occasional balancing and stooping (Tr. 141). His manipulative limitations consisted of a preclusion on fingering and feeling with the right hand, and the otherwise occasional use of the right side "as an assist to the left" (Tr. 142). Environmental limitations were limited to avoiding concentrated exposure to temperature extremes and vibration as well as avoiding even moderate exposure to machinery, heights, and other hazards (Tr. 143).

---

[2] A Global Assessment of Functioning ("GAF") score of 21-30 indicates that "behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment OR inability to function in almost all areas. American Psychiatric Association." *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR*)(4th ed. 2000). A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *Id.*

The same month, Linda Brewer, M.A. performed a consultive psychological examination of Plaintiff on behalf of the SSA (Tr. 131-138). Denying current drug or alcohol use, Plaintiff reported that he had been treated for alcohol abuse at the age of 25 (Tr. 132-133). He indicated that he had never been married but had five children under the age of 14 (Tr. 132). Plaintiff reported that he spent two years in prison for a DUI (Tr. 133). He appeared in contact with realty with poor self esteem (Tr. 134). Plaintiff reported suicidal ideation but denied in engaging in "self-harming behavior" (Tr. 134). Brewer declined to diagnose "a specific anxiety disorder," opining that his anxiety was attributable to physical difficulties (Tr. 137). She assigned Plaintiff a GAF of 56[3] (Tr. 137).

In September, 2005, a Psychiatric Review Technique by Mark Garner, Ph.D. found the presence of anxiety-related and substance addiction disorders (Tr. 155, 158). Under the "B" criteria, Dr. Garner found the presence of moderate restrictions in daily living, social functioning, and maintaining concentration, persistence, and pace (Tr. 160). Dr. Garner also completed a Residual Functional Capacity Assessment (mental) finding that Plaintiff experienced difficulty understanding and carrying out detailed instructions; maintaining attention for extended periods; interacting with the general public and coworkers; and responding to change appropriately in a work setting (Tr. 164-165). Dr. Garner found nonetheless that Plaintiff could perform "simple tasks on a sustained basis, within his physical limitations" (Tr. 166).

### 3. Material Submitted Subsequent to the February 13, 2008 Administrative Opinion

In Janaury, 2005, Plaintiff sought treatment for knee pain (Tr. 276). In October, 2005, Plaintiff reported problems climbing stairs, performing self care activities, and household chores (Tr.

---

[3] A GAF score of 51-60 indicates moderate symptoms OR moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders-Text Revision* at 34 ( *DSM-IV-TR* ) (4th ed.2000).

274). In March, 2007, Plaintiff sought emergency treatment for a seizure (Tr. 288). He was advised that his marijuana use could interfere with his seizure medication (Tr. 263-264). In August, 2007, Plaintiff, driven to the hospital by a friend after being found on the ground outside, was deemed "obviously intoxicated" by hospital staff (Tr. 285). Imaging studies of the cervical spine found the absence of stenosis (Tr. 281).

### C. Vocational Expert February 6, 2008 Testimony

VE Timothy Lee Shaner classified Plaintiff's brief work as a fast food worker as unskilled at the light exertional level[4] (Tr. 72). The ALJ then posed the following hypothetical question to the VE, taking into account Plaintiff's age, education, and work history:

> Light work with no more than two hours a day standing or walking and must use a hand-held assistive device while walking; no fingering or feeling; only occasional use of the right hand as an assist to the left hand; no lifting or carrying while walking; no climbing ropes, ladders or scaffolds; only occasional bending, twisting, squatting. Can do simple, routine tasks only in a low-stress environment, by that I mean minimal changes in a workplace setting, no more than occasional contact with the general public; no exposure to unprotected heights or unguarded hazardous machinery. Given whose limitations, is there work an individual could perform and, if so, please tell me what that work would be, along with the occupational title and number of jobs available in the region. By region, I mean the state of Michigan. If there's not jobs at the light [exertional level] with those restrictions, if you could give me some at the sedentary?

(Tr. 310). The VE stated that the above limitations were compatible with sedentary work, finding that the individual could perform the jobs of surveillance system monitor (300 positions in the regional economy); visual inspector (2,000); and general office clerk (2,000) (Tr. 310).

---

[4] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

The VE testified that the job findings were compatible with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 310). The VE found further that if the hypothetical individual were further restricted by "pain, fatigue and depression" preventing the concentration to perform "even simple, routine tasks" on a full-time basis, all work would be precluded (Tr. 310-311).

**D.     ALJ Christensen's Decision**

Citing Plaintiff's medical records and testimony, ALJ Christensen found that Plaintiff experienced the severe impairments of "status post gunshot wound (with partial hemiparesis on the right side), a depressive disorder, an anxiety disorder, history of substance abuse, a seizure disorder, hypertension and right knee pain" but that none of the conditions met or medically equaled the impairments found in Part 404 Appendix 1 Subpart P, Appendix No. 1 (Tr. 18-19). The ALJ found that Plaintiff retained the following Residual Functional Capacity ("RFC"):

> to perform sedentary work with no more than [two] hours a day of standing or walking, with the ability to use a hand held assistance devices when walking; with no fingering, feeling and only occasional use of the right hand as an assist to the left hand with no lifting/carrying while walking; with no climbing of ropes, ladders and scaffolds, with only occasional bending and twisting with no squatting; performing only simple routine tasks in a low stress environment (by that I mean minimal changes in workplace settings) with no exposure to unprotected heights or unguarded hazardous machinery

(Tr. 20). Consistent with the VE's job findings, the ALJ determined that Plaintiff could work as a surveillance systems monitor, visual inspector, or general office clerk (Tr. 22).

The ALJ rejected Plaintiff's allegations of disability, noting that his seizures were "well controlled" with medication, and "no indication of medical worsening since the prior decision of [ALJ] Sobrino" (Tr. 21). He observed that Plaintiff had "spent considerable time in jail due to drunk driving," had "no work history," and "[did] not appear interested in work" (Tr. 21).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5)

if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS[5]

### The Hypothetical Question

Plaintiff argues that the hypothetical limitations posed by the ALJ did not reflect his psychological limitations. *Plaintiff's Brief* at 6-10, *Doc. #11*. Citing *Varley v. Commissioner of Health and Human Services,* 820 F.2d 777, 779 (6th Cir. 1987), Plaintiff contends that the ALJ's failure to account for his full degree of limitation invalidates the Step Five job findings. *Id.* at 6-7. He makes the overlapping argument that ALJ Christensen erred by posing a question reflecting a "lesser" degree of psychological impairment than that found in ALJ Sobrino's January 5, 2005 opinion. *Id.* at 9-10 (citing *Drummond v. Commissioner of Social Security,* 126 F.3d 837 (6th Cir. 1997)).

*Varley v. Commissioner of Health and Human Services,* 820 F.2d 777, 779 (6th Cir.1987) holds that a hypothetical question constitutes substantial evidence only if it accurately portrays the individual's impairments. *See also Webb v. Commissioner of Social Sec.* 368 F.3d 629, 632 (6th Cir. 2004). Nonetheless, "the ALJ is not obliged to incorporate unsubstantiated complaints into his

---

[5] The June 25, 2010 Appeals Council decision indicates that in addition to the February 26, 2005 to August 14, 2007 records submitted with the appeal (Tr. 262-290), Plaintiff's attorney also provided the Appeals Council with medical and psychological treating records postdating the February 14, 2008 administrative decision (Tr. 4). The latter records are not included in the transcript. The omission of Appeals Council submissions from the transcript is troubling. Nonetheless, because Plaintiff does not argue that the excluded material bears any relevance to the present claim, the oversight is harmless.

hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994)(*citing Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987)).

Substantial evidence supports ALJ Christensen's choice of psychological limitations consisting of "simple, routine tasks only in a low-stress environment," with "minimal changes in a workplace setting," and "no more than occasional contact with the general public" (Tr. 310). The ALJ noted that aside from brief inpatient care in August, 2007, Plaintiff had not sought psychological treatment (Tr. 21). He noted further that Plaintiff took care of his personal needs, attended church, and socialized with a range of family members on a regular basis (Tr. 21). He found that Plaintiff's claim that he no longer used drugs was belied by recent testing showing continued marijuana use (Tr. 21).

Plaintiff appears to argue that his limitations in concentration, persistence, and pace were not fully acknowledged in hypothetical question. However, VE testimony that Plaintiff could perform the unskilled jobs of surveillance system monitor, visual inspector, or office clerk (none of which require assembly line work) are consistent with the mental Residual Functional Capacity conclusion that he could perform "simple tasks on a sustained basis" (Tr. 166, 310).

Citing *Drummond*, *supra,* 126 F.3d at 840, Plaintiff makes a related argument that ALJ Christensen impermissibly deviated from ALJ Sobrino's 2005 findings. *Plaintiff's Brief* at 9-10. He points out that while ALJ Sobrino found "marked" concentrational deficiences, ALJ Christensen's found only "moderate" ones (*compare* Tr. 21, 39). Plaintiff also faults ALJ Christensen for composing a less restrictive hypothetical. He notes that while ALJ Sobrino found that he was restricted to "work that does not involve more than superficial contact with co-workers and supervisors, and ... does not require dealing with the general public," (Tr. 42) ALJ Christensen

-10-

merely limited Plaintiff to "no more than occasional contact with the general public"[6] (Tr. 309). Plaintiff also faults ALJ Christensen for failing to cite *Drummond* in discussing ALJ Sobrino's findings.

> Acquiescence Ruling 98-4, codifying *Drummond*, provides as follows:
>
> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in law, regulations, or rulings affecting the finding or method for arriving at the finding.

AR 98-4(6).

To the extent that ALJ Christensen's findings substantively differ from ALJ Sobrino's, they are well supported by evidence postdating the January 5, 2005 decision. While Plaintiff disputes the change from marked to moderate concentrational limitations, ALJ Christensen supported the lesser degree of impairment by noting that since the earlier decision, Plaintiff had not sought ongoing psychological treatment and that concentrational deficiencies were partially attributable to ongoing illicit drug use (Tr. 19, 21). The finding that Plaintiff now experienced "moderate" rather "marked" concentrational problems is drawn directly from the September, 2005 Psychiatric Review Technique (Tr. 160). While Plaintiff cites a GAF of 50 assigned at the time of his August 27, 2007 discharge in support of the fact that he continued to experience "marked" concentrational limitations, there is a dearth of evidence supporting the conclusion that he continued to experience marked concentrational problems following his six-day stint at the inpatient facility.

---

[6]Because the earlier hearing transcript is not included in the administrative record, the undersigned assumes (as is customary) that the content of ALJ Sobrino's hypothetical question was essentially identical to the RFC that found in her opinion (Tr. 42).

Plaintiff also faults ALJ Christensen for failing to include ALJ Sobrino's preclusion on all contact with the general public (and limited contact with coworkers) from his hypothetical question. Even assuming both that the discrepancy could be considered material and that substantial evidence did *not* support ALJ Christensen's hypothetical, the error is harmless considering that the VE's 2008 job findings (surveillance systems monitor, visual inspector, general office clerk) appear equally if not more restrictive than the 2005 findings (inspector, records clerk, or assembler). In any case, Plaintiff does not explain *why* he is precluded from the above-cited jobs.

Finally, I disagree that ALJ Christensen's erred merely by failing to cite Acquiescence Ruling 98-4. The administrative decision acknowledges ALJ Sobrino's earlier findings. Further, while in the absence of "new and material" evidence, ALJ Christensen would have been bound by the earlier decision, his administrative findings are almost exclusively devoted to records created after January, 2005 which support the conclusion that while Plaintiff's physical condition declined somewhat, his psychological conditions was modestly improved. Since the earlier decision, Plaintiff married (albeit for a short time before separating), was able to maintain relationships with family members, visit with his various children on a limited basis, and attend church. Likewise, August 2007 discharge notes state that Plaintiff exhibited good insight and was "alert, friendly, [and] talkative" (Tr. 224). Because "new and material" evidence supports the differences between ALJ Sobrino and ALJ Christensen's findings, the latest administrative decision should be upheld.

In closing, I note that the recommendation to uphold the administrative findings should not be read to trivialize Plaintiff's physical limitations as a result of his 1989 injuries. However, the ALJ's determination that the he is capable of a range of unskilled sedentary work is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend Defendant's motion for summary judgment be GRANTED and Plaintiff's motion DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                  s/R. Steven Whalen
                                                  R. STEVEN WHALEN
                                                  UNITED STATES MAGISTRATE JUDGE

Dated: June 16, 2011

_____

### CERTIFICATE OF SERVICE

I hereby certify on June 16, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on June 16, 2011: **None.**

                                                  s/Michael E. Lang
                                                  Deputy Clerk to
                                                  Magistrate Judge R. Steven Whalen
                                                  (313) 234-5217